JUDGE KOELTL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ESTATE OF ALEXANDER R. PIPER III; and
MARTHA PIPER, Individually,

                       Plaintiffs,

  - against -

METROPOLITAN INSURANCE AND ANNUITY
COMPANY; and METROPOLITAN LIFE,
                       Defendants.
------------------------------------------------------------X

07 CIV 9548

COMPLAINT

2007 CIV

JURY TRIAL DEMANDED

OCT 25 2007
U.S.D.C. S.D. N.Y.

      Plaintiffs, Estate of Alexander R. Piper III ("Mr. Piper") and Martha Piper ("Mrs. Piper" and together with Mr. Piper, "Plaintiffs" or "plaintiffs") by and through their undersigned counsel, The Law Offices of Neal Brickman, P.C., 317 Madison Avenue, 21st Floor, New York, New York 10017, as and for their Complaint against defendant, Metropolitan Insurance and Annuity Company ("Insurance") and Metropolitan Life ("MetLife" and together with Insurance, "Defendants" or "defendants"), state and allege as follows:

### STATEMENT PURSUANT TO LOCAL CIVIL RULE 1.9

1. Plaintiff Mr. Piper was an individual citizen of the United States at the time of his passing and, therefore, neither represented nor acted, nor represents nor acts, for any other parties, subsidiaries, affiliates or entities.

2. Plaintiff Mrs. Piper is an individual citizen of the state of Massachusetts and, therefore, neither represents nor acts for any other parties, subsidiaries, affiliates or entities.

### NATURE OF ACTION

3. This is an action for breach of contract, negligence, misrepresentation and unjust enrichment, based on Defendants' failure to follow their own procedures for notifications of alleged defaults and the failure to make payment upon Mr. Piper's life insurance policy at the

time of his passing to the named Beneficiary, Mrs. Piper.

## JURISDICTION

4. Jurisdiction is founded upon diversity of citizenship pursuant to 28 United States Code §1332 by virtue of the fact that plaintiffs (Massachusetts) and defendants (Delaware and New York) reside in different states and that the amount in controversy, exclusive of interest and attorney's fees, exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00).

## VENUE

5. Venue is proper in this district pursuant to 28 United States Code §1391(b) because a substantial part of the events, including the purchase of the policy, giving rise to plaintiff's claims occurred in this district.

## PARTIES

6. The Estate of Mr. Piper was created shortly after his passing in 2006. The Estate was probated in the State of Massachusetts.

7. Mrs. Piper is a female citizen of the State of Massachusetts with her principal residence in South Egremont.

8. Upon information and belief, at all times relevant hereto, defendant Insurance was, and is, a Delaware corporation conducting business, *inter alia*, in the field of life insurance within the State of New York.

9. Upon information and belief, at all times relevant hereto, MetLife is a Delaware corporation with its headquarters and principal place business in New York, New York which is the parent corporation of Insurance.

## STATEMENT OF FACTS

10. On or about February 1, 1987 Insurance issued a Flexible Life Insurance Plan of

Insurance bearing policy number 876115025UL (the "Policy") on the life of Mr. Piper to Cohen, Cohen and Duffy, Mr. Piper's employer at that time.

11. On or about May, 1988, the face amount of the Policy was raised to $473,000.00.

12. On or about January 22, 1991, the Policy was assigned to Mr. Piper who provided a new mailing address of P.O. Box 327, South Egremont, Massachusetts 01258, an address that has been maintained by Plaintiffs without stoppage from 1976 through the present.

13. The Plaintiffs -- almost invariably Mrs. Piper -- made all premium payments from 1991 through, at least 2002, when they ceased getting any bills or statements from Defendants.

14. In or about 1999, Plaintiffs requested that statements to be sent temporarily to P.O. Box 91, North Egremont Massachusetts 01258, a location closer to the temporary location of Defendants while renovations were being done to their home.

15. Mail continued to be forwarded from P.O. Box 91 to P.O. Box 327 on a regular basis through 2003 and sporadically thereafter. Plaintiffs policy and practice was to revert all bills to the P.O. Box 327 address, but no bills were received from Defendants subsequent to 2002. Instead, Plaintiffs received Policy Holder Trust Statements *at the P.O. Box 327 address*.

16. During all relevant times, MetLife directed Mr. Piper's "MetLife Policyholder Trust Statements", including 1099 Tax Forms, to be sent to P.O. Box 327. Tellingly, these Policyholder statements reflected credit balances, from which Plaintiff's believed any remaining premiums would be drawn.

17. As Plaintiffs continued to get mailings from Defendants, including the aforementioned "MetLife Policyholder Trust Statements", but not further requests for premium payments, they, and Mrs. Piper in particular, reasonably assumed that the Policy had been paid off, having annually paid, upon information and belief, in excess of $6,000.00 for each of the

years of the Policy's existence.

18. The Policy asserts, among other items, that Insurance will send regular requests for premium payments. When Defendants did send such requests for payment, they were promptly acted on by Mrs. Piper and paid.

19. The Policy also asserts that Insurance will provide notice of any default; as well as the commencement and cessation of any grace period, as applicable. No such notices were provided to Plaintiffs.

20. Upon Mr. Piper's death, Mrs. Piper duly contacted Insurance to alert it to the fact of Mr. Piper's passing.

21. It was at that time that Mrs. Piper first learned that Defendants had determined not to make payment to her as Beneficiary under the Policy.

22. The stated reason for such denial at that time was that the Policy had been defaulted on or about November 3, 2003.

23. When Mrs. Piper alerted Insurance to the fact that Plaintiffs had never received notice of any such default or cancellation she was initially informed, by written correspondence of October 12, 2006, that:

    a. Insurance had sent mail to P.O. Box 91 until 2003 when it was returned as undeliverable;

    b. Insurance then -- "using our [its] search criteria..." -- uncovered the no longer current New York City apartment for Mr. Piper.[1] (Insurance determined that it should send mail

---

[1] While Mr. Piper did maintain an apartment in New York City for work purposes during the late 1990's until early October, 2002, he never provided this address to Defendants and P.O. Box 327 remained his permanent legal address for all purposes; a fact demonstrated by the continued mailings of Policyholder Trust Statements to that address.

to that address rather than the address it was using for Policy Holder Trust Statements and which it previously had on file; and without sending any correspondence to the prior address as some mail was still being forwarded at that time);

c. Insurance then allegedly sent an audit letter to the new address that was neither returned as undeliverable or sent back as a reply;

d. Insurance found no problem with the New York address until January, 2004 when mail was again returned as undeliverable; and

e. Insurance further asserted that at that time it was unable to find a more current address; this despite the facts that MetLife had previously directed, was then directing and continued for the subsequent years to direct that Policy Holder Trust Statements be sent to P.O. Box 327; and that such, continuously active, address remained Mr. Piper's permanent United States address until his death.

24. Nothing in that correspondence discusses the purported cancellation notice (or notices) that should have been sent to Mr. Piper or the correspondences that framed the grace period as provided for in the Policy.

25. Insurance's next correspondence on the subject, namely a May 1, 2007, letter, in direct contravention of the assertions contained in the October 12, 2006 "justification", asserted that the November 1, 2003 notice of default/cancellation "was returned by the Post Office as undelivered with a notation, 'moved.' No further letters would have been sent as we did not have a current address at that time."

26. Insurance's most recent correspondence of June 21, 2007, alters the "justification" once more by asserting that the termination letter was sent to the New York address on November 3, 2003 but was not returned.

27. Defendants continue to refuse to pay any benefit as would have been due under the policy or allow Plaintiff's to reinstate the Policy so as to achieve the benefits of the Policy for which Defendants accepted premium payments for over Fifteen (15) years.

### AS AND FOR A FIRST CAUSE OF ACTION
(Breach of Contract as Against Defendants)

28. Plaintiffs repeat, reiterate and reallege each and every allegation set forth in paragraphs "1" through "27" with the same force and effect as if fully set forth herein at length.

29. Despite good faith performance by Plaintiffs and payment of every premium payment request that they, or either of them, received, Defendants have failed to make good on the Policy, whose face value was $473,000.00 at the time of Mr. Piper's death.

30. In addition, the Policy provides that certain notices, including, but not limited to, notices of premium payments due; policy termination/reinstatement and notices of the beginning and end of any grace period after purported non-payment, would be sent to the Policyholder, as well as any assignee, but same were not sent in this instance.

31. Plaintiffs had a reasonable expectation -- and did, in fact, reasonably rely on the same -- that Defendants would provide notices for additional premium payments, notices that they duly received during the first approximately fourteen years that the Policy was in effect.

32. Plaintiffs had a reasonable expectation -- and did, in fact, reasonably rely on the same -- that Defendants would provide notice of any Policy termination.

33. Insurance provided no such notices in contravention of the Policy, as well as Insurance Law §3211.

34. Moreover, even assuming that some mail sent by Insurance -- albeit not certain of the Statements directed by MetLife and a fact disputed by Plaintiffs as mail was routinely

forwarded to Po. Box 327 from the addresses from which Defendants allegedly received returned mail -- was returned, Defendants, in their own words, were "then required to do research to try to find a better address."

35. Defendants unequivocally failed to execute that obligation.

36. As a direct result of these breaches of contract, plaintiffs have suffered injury and harm in an amount to be determined at trial, but in no event less than $473,000.00 plus interest; the costs and fees of this action; and any such other or further relief as the Court deems fit and proper.

## AS AND FOR A SECOND CAUSE OF ACTION
(Negligence as Against Defendants)

37. Plaintiffs repeat, reiterate and reallege each and every allegation set forth in paragraphs "1" through "36" with the same force and effect as if fully set forth herein at length.

38. Defendants owed Plaintiffs a duty of care.

39. Defendants owed Plaintiffs a duty of care in sending the Plaintiffs notices, statements or other correspondence to the proper addresses.

40. Moreover, defendants assumed a duty of care to ascertain alternative addresses for policyholders if correspondence was returned as undeliverable (e.g., one would imagine, the address to which policyholder statements were then being sent and to which all correspondence had been sent for approximately a decade prior to a temporary address change during renovations to Plaintiff's house.

41. A reasonable business in Defendants position would not have sent critical cancellation notices to an address that was no longer occupied by the designated recipient, but Defendants did.

42. A reasonable business in Defendants position would not have sent critical cancellation notices to an address that was no longer occupied by the designated recipient when related Policy Holder statements were simultaneously being sent to the proper address, but defendants did.

43. A reasonable business in Defendants position would not have sent critical cancellation notices to an address that was no longer occupied by the designated recipient when they had another address on file- to which they had previously sent statements - that was the valid and working address for the designated recipient, as well as the address from which most, if not all, premium statements had been mailed, but defendants did.

44. A reasonable business in Defendants position using even a modicum of due diligence would have been able to locate the proper address for Plaintiffs, but defendants did not.

45. As a direct result of these acts of negligence, Plaintiffs suffered injury and harm in an amount to be determined at trial, but in no event less than $553,000.00 plus interest; the costs and fees of this action; and any such other or further relief as the Court deems fit and proper.

### AS AND FOR A THIRD CAUSE OF ACTION
(Unjust Enrichment Against Insurance)

46. Plaintiffs repeat, reiterate and reallege each and every allegation set forth in paragraphs "1" through "45" with the same force and effect as if fully set forth herein at length.

47. Insurance collected in excess of $90,000.00 in premiums over the course of approximately 15 years from plaintiffs with the understanding it would then provide life insurance coverage for plaintiffs for such monies.

48. Because of its own bad acts, the Policy was cancelled and marked terminated, although plaintiffs were never provided actual notice of the same.

49. Effectively, defendants accepted plaintiffs' payments and then denied them the benefits of the Policy.

50. As a direct result of this unjust enrichment, plaintiffs suffered injury and harm in an amount to be determined at trial, but in no event less than $90,000.00 plus interest; the costs and fees of this action; and any such other or further relief as the Court deems fit and proper.

## JURY DEMAND

51. Plaintiff hereby demands a trial by jury on all facts and issues raised herein.

Dated: New York, New York
       October 23, 2007

*[signature]*

Neal Brickman (NB0874)
Ethan Leonard (EL2497)
Law Offices of Neal Brickman, P.C.
Attorneys for Plaintiffs
317 Madison Avenue - 21st Floor
New York, New York 10017
(212) 986-6840