# EXHIBIT 1

NO. 6N1-356
BAG MO

**Metropolitan Life** ®
AND AFFILIATED COMPANIES

# Metropolitan Insurance and Annuity Company

### A Stock Company Incorporated in Delaware

Metropolitan Insurance and Annuity Company will pay the benefits provided by this policy according to its provisions.

Insured    **ALEXANDER R PIPER III**

Face Amount
of Insurance    $391,000    **AS OF FEB. 1, 1987**

Policy Number    876 115 025 UL

Plan    **Flexible-Premium Life**

*Christine N. Markussen*
Christine N. Markussen
Vice-President and Secretary

*Tony Cannatella*
Anthony Cannatella
Chairman of the Board
President and Chief Executive Officer

## Flexible-Premium Life Insurance Policy

Life insurance payable if the insured dies before the Final Date of Policy.
Accumulation Fund payable on the Final Date.
Adjustable death benefit.
Premiums payable while the insured is alive and before the Final Date of Policy.
Premiums must be sufficient to keep the policy in force.
Not eligible for dividends.

**10-Day Right to Examine Policy**-- Please read this policy. You may return this policy to Metropolitan or to the sales representative through whom you bought it within 10 days from the date you receive it. If you return it within the 10-day period, the policy will be void from the beginning. We will refund any premium paid.

See Table of Contents and Company address on back cover.

7-82 MIAC                                    1                                    AAAAAA

Page 2 of 26 received at 2/1/2008 11:25:28 AM [Eastern Standard Time] on server AS-LINYFAXSVR04.

METROPOLITAN INSURANCE AND ANNUITY COMPANY - WILMINGTON, DELAWARE 19808
POLICY SPECIFICATIONS

DATE OF POLICY . . . . . . . . . . . . . . FEBRUARY 01, 1987

INSURED'S AGE AND SEX . . . . . . . . . 50 MALE

FINAL DATE OF POLICY . . . . . . . . . . POLICY ANNIVERSARY AT AGE 95

DEATH BENEFIT . . . . . . . . . . . . . OPTION A   (SEE PAGE 5)

OWNER . . . . . . . . . . . . . . . . . THE INSURED

BENEFICIARY . . . . . . . . . . . . . . SEE APPLICATION

CONTINGENT BENEFICIARY . . . . . . . . . SEE APPLICATION


POLICY CLASSIFICATION . . . . . . . . . PREFERRED - NONSMOKER


INSURED

ALEXANDER R PIPER III


FACE AMOUNT ... $391,000                   876115025UL . POLICY NUMBER
PLAN . . . . . . FLEXIBLE PREMIUM LIFE     8N1    355


THIS POLICY PROVIDES LIFE INSURANCE COVERAGE UNTIL THE FINAL DATE IF
SUFFICIENT PREMIUMS ARE PAID.  THE PLANNED PREMIUM SHOWN BELOW MAY
NEED TO BE INCREASED TO KEEP THIS POLICY AND COVERAGE IN FORCE.

PLANNED PREMIUM OF    $3,097.46-PAYABLE SEMI-ANNUALLY

(TOTAL PREMIUM FOR LIFE INSURANCE BENEFIT, ANY SUPPLEMENTAL RATING
AND ANY ADDITIONAL BENEFITS LISTED BELOW)


ADDITIONAL BENEFITS

| RIDER | FINAL DATE OF RIDER | RIDER INSURANCE BENEFIT |
|---|---|---|
| DISABILITY BENEFIT | FEB. 01, 1997 | - |


FORM 7-82  MIAC  N.Y.              3            401.402.403.404.

## Table of Guaranteed Maximum Rate for Each $1,000 of Term Insurance
### (See "Cost of Term Insurance" Provision on page 6.)

| Age Male | Age Female | Monthly Rate* | Age Male | Age Female | Monthly Rate* | Age Male | Age Female | Monthly Rate* |
|---|---|---|---|---|---|---|---|---|
| 0 | • | .370 | 33 | 36 | .196 | 79 | 82 | 9.320 |
| 1 | • | .136 | 34 | 37 | .204 | 80 | 83 | 10.174 |
| 2 | - | .124 | 35 | 38 | .214 | 81 | 84 | 11.088 |
| 3 | • | .119 | 36 | 39 | .227 | 82 | 85 | 12.053 |
| 4 | • | .114 | 37 | 40 | .242 | 83 | 86 | 13.070 |
| 5 | • | .110 | 38 | 41 | .261 | 84 | 87 | 14.146 |
| 6 | • | .106 | 39 | 42 | .283 | 85 | 88 | 15.289 |
| 7 | • | .103 | 40 | 43 | .307 | 86 | 89 | 16.509 |
| 8 | • | .101 | 41 | 44 | .334 | 87 | 90 | 17.822 |
| 9 | - | .100 | 42 | 45 | .363 | 88 | 91 | 19.256 |
| 10 | • | .101 | 43 | 46 | .394 | 89 | 92 | 20.852 |
| 11 | • | .103 | 44 | 47 | .429 | 90 | 93 | 22.665 |
| - | 0 | .329 | 45 | 48 | .467 | 91 | 94 | 24.769 |
| - | 1 | .128 | 46 | 49 | .509 | 92 | • | 27.258 |
| • | 2 | .115 | 47 | 50 | .556 | 93 | • | 30.251 |
| • | 3 | .110 | 48 | 51 | .608 | 94 | • | 34.025 |
| • | 4 | .105 | 49 | 52 | .666 | | | |
| - | 5 | .101 | 50 | 53 | .729 | | | |
| - | 6 | .097 | 51 | 54 | .798 | | | |
| • | 7 | .094 | 52 | 55 | .873 | | | |
| • | 8 | .092 | 53 | 56 | .955 | | | |
| • | 9 | .092 | 54 | 57 | 1.044 | | | |
| • | 10 | .092 | 55 | 58 | 1.141 | | | |
| • | 11 | .094 | 56 | 59 | 1.249 | | | |
| - | 12 | .096 | 57 | 60 | 1.367 | | | |
| - | 13 | .099 | 58 | 61 | 1.496 | | | |
| - | 14 | .102 | 59 | 62 | 1.638 | | | |
| 12 | 15 | .107 | 60 | 63 | 1.794 | | | |
| 13 | 16 | .113 | 61 | 64 | 1.963 | | | |
| 14 | 17 | .118 | 62 | 65 | 2.148 | | | |
| 15 | 18 | .125 | 63 | 66 | 2.351 | | | |
| 16 | 19 | .131 | 64 | 67 | 2.573 | | | |
| 17 | 20 | .138 | 65 | 68 | 2.819 | | | |
| 18 | 21 | .143 | 66 | 69 | 3.091 | | | |
| 19 | 22 | .147 | 67 | 70 | 3.392 | | | |
| 20 | 23 | .151 | 68 | 71 | 3.722 | | | |
| 21 | 24 | .153 | 69 | 72 | 4.076 | | | |
| 22 | 25 | .156 | 70 | 73 | 4.452 | | | |
| 23 | 26 | .158 | 71 | 74 | 4.843 | | | |
| 24 | 27 | .160 | 72 | 75 | 5.248 | | | |
| 25 | 28 | .162 | 73 | 76 | 5.671 | | | |
| 26 | 29 | .164 | 74 | 77 | 6.124 | | | |
| 27 | 30 | .167 | 75 | 78 | 6.623 | | | |
| 28 | 31 | .171 | 76 | 79 | 7.183 | | | |
| 29 | 32 | .175 | 77 | 80 | 7.817 | | | |
| 30 | 33 | .180 | 78 | 81 | 8.532 | | | |
| 31 | 34 | .185 | | | | | | |
| 32 | 35 | .190 | | | | | | |

\* If there is a supplemental rating for the life insurance benefit, as shown on page 3, the monthly deduction for such supplemental rating must be added to the monthly rate determined from this table.

401-82                                                4

Page 4 of 26 received at 2/1/2008 11:25:28 AM [Eastern Standard Time] on server AS-LINYFAXSVR04.

AAAAAG

"Date of policy" on page 3, the *Incontestability* provision and elsewhere in the policy means "date of issue of the policy"

## Policy Summary

This policy provides life insurance until the Final Date of Policy provided that premiums are sufficient to keep this policy in force. Life insurance is payable to the beneficiary if the insured dies before the Final Date of Policy. If the insured is alive on the Final Date, the accumulation fund is payable to the owner.

After the first policy year, you may change the death benefit option or change the Specified Face Amount of Insurance.

A cash withdrawal benefit is available at anu time while the insured is alive and the policy is in force. A partial withdrawal must be at least $250. A partial withdrawal will reduce the accumulation fund, and, if Death Benefit Option A is in effect, will also reduce the Specified Face Amount of Insurance. If you request and are paid the full cash withdrawal value, this policy and all our obligations under it will end.

Your policy is not eligible for dividends.

Your policy may include riders that provide additional benefits. Any such riders follow page 10 of this policy.

7-82S MIAC                                      4A                                      AAAAFK

# Understanding This Policy

"You" and "your" refer to the owner of this policy.

"We", "us" and "our" refer to Metropolitan Insurance and Annuity Company

The "insured" named on page 3 is the person at whose death the insurance proceeds will be payable.

The "Specified Face Amount of Insurance" as of the date of policy is shown on page 3. A new page 3 will be issued to show any change in the Specified Face Amount of Insurance that has occurred at your request.

The "Date of Policy" is shown on page 3.

The "Final Date of Policy" is the policy anniversary on which the insured is age 95.

Policy years and months are measured from the date of policy. For example, if the date of policy is May 5, 1990, the first policy month ends June 4, 1990, and the first policy year ends May 4, 1991. Similarly, the first monthly anniversary is June 5, 1990, and the first policy anniversary is May 5, 1991.

The "accumulation fund" forms the basis for the benefits provided under your policy. Computation of the accumulation fund is described on page 6.

The "Designated Office" is our Executive Office at One Madison Avenue, New York, N. Y. 10010. We may, by written notice, name other offices within the United States to serve as Designated Offices.

To make this policy clear and easy to read, we have left out many cross-references and conditional statements. Therefore, the provisions of the policy must be read as a whole. For example, our payment of the insurance proceeds (see page 5) depends upon the payment of sufficient premiums (see page 7).

To exercise your rights, you should follow the procedures stated in this policy. If you want to request a payment, adjust the death benefit, change a beneficiary, change an address or request any other action by us, you should do so on the forms prepared for each purpose. You can get these forms from your sales representative or our Designated Office.

## Payment When Insured Dies

**Insurance Proceeds**-- If the insured dies before the Final Date of Policy, an amount of money, called the insurance proceeds, will be payable to the beneficiary. The insurance proceeds are the sum of:

* The death benefit described below.
          PLUS
* Any insurance on the insured's life that may be provided by riders to this policy.
          MINUS
* Any policy loan and loan interest.

We will pay the insurance proceeds to the beneficiary after we receive proof of death and a proper written claim.

### Amended by R.S. 926 MIAC
**Death Benefit**-- The death benefit under this policy will beeither (1) or (2) below, whichever is chosen and is in effect on the date of death:

1. Under Option A, the greater of:

   (a)  the Specified Face Amount of Insurance,
                      or
   (b)  110% of the accumulation fund on the date of death.

2. Under Option B:

   The Specified Face Amount of Insurance;
              PLUS
   The accumulation fund on the date of death.

**Death Benefit Adjustment**-- at any time after the first policy year while this policy is in force, you may change the death benefit option or change (either increase or decrease) the Specified Face Amount of Insurance, subject to the following.

1. In the event of a change in the death benefit option, we will change the Specified Face Amount of Insurance, as needed.

2. The Specified Face Amount of Insurance may not be reduced to less than $50,000 during the first 5 policy years or to less than $25,000 after the 5th policy year.

3. For any change which would increase the death benefit, you must provide evidence satisfactory to us of the insurability of the insured. Also, the increased death benefit will be subject to a charge of $3 for each $1,000 of insurance increase. We will deduct this charge from the accumulation fund as of the date the increase takes effect.

4. No change in the death benefit will take effect unless the accumulation fund, after the change, is sufficient to keep this policy in force for at least 2 months. Subject to this condition, a request for a change in the death benefit will take effect on the monthly anniversary which coincides with or next follows: (a) if evidence of insurability is required, the date we approve the request, or (b) if not, the date of the request.

5. We will issue a new page 3 for this policy showing the change. We may require that you send us this policy to make the change.

Page 6 of 26 received at 2/1/2008 11:25:28 AM [Eastern Standard Time] on server AS-LINYFAXSVR04.

Page 7 of 25 received at 2/1/2008 11:25:28 AM [Eastern Standard Time] on server AS-LINYFAXSVR04.

Case 1:07-cv-09548-LTS-GWG     Document 15-2     Filed 02/01/2008     Page 7 of 25

# Computation of Accumulation Fund

**Accumulation Fund**- The value of the accumulation fund is as follows:

* On the date of policy - 91% of the first premium;

### MINUS

The monthly deduction for the first month.

* On any monthly anniversary-The value on the last monthly anniversary;

### PLUS

One month's interest on such value at the currently applicable rates;

### PLUS

91% of the premiums received since the last monthly anniversary;

### MINUS

The monthly deduction for the month beginning on the current monthly anniversary.

* On other than a monthly anniversary-The value on the last monthly anniversary;

### PLUS

91% of the premiums received since the last monthly anniversary.

Note: The 9% deduction from premiums is an expense charge.

If you make a partial cash withdrawal (see page 7), the accumulation fund defined above will be reduced by the amount of such withdrawal.

**Monthly Deduction**- The deduction for any policy month is the sum of the following amounts, determined as of the beginning of that month:

* The monthly cost of the term insurance (See Cost of Term Insurance on page 6).

* The monthly cost of any benefits provided by riders.

* For each of the first 12 policy months only, a charge of $35 plus $.25 for each $1,000 of Specified Face Amount of Insurance.

**Interest Rate**- The guaranteed interest rate used to determine the accumulation fund is .3273% a month, compounded monthly. This is equivalent to a rate of 4% a year, compounded annually.

Interest will be credited to the accumulation fund each month as follows:

* At the guaranteed interest rate on the first $1,000 in the accumulation fund.

* In the manner and at the rate we set from time to time, on amounts in excess of $1,000 in the accumulation fund. The rate we set will never be less than the guaranteed interest rate.

* If there is a loan against this policy, interest on that portion of the accumulation fund in excess of $1,000 that equals the loan will be at a rate we set. The rate with respect to the amount of the loan will never be less than the guaranteed interest rate.

**Example**- Suppose the accumulation fund is $10,000 and there is a policy loan of $2,000. If we set the annual interest rates at 10% for amounts over $1,000 in the accumulation fund and at 6% for any loan, then interest would be credited: at the rate of 4% on the first $1,000; at the rate of 6% on the next $2,000 representing the amount of the loan; and at the rate of 10% on the remaining $7,000.

**Cost of Term Insurance**- Under either death benefit option, the amount of term insurance for any policy month is equal to:

* The death benefit divided by 1.0032737;

### MINUS

* The accumulation fund

The accumulation fund used in this calculation is the accumulation fund at the beginning of the policy month before deduction for the monthly cost of term insurance, but after the deductions for riders and any other charges.

The cost of the term insurance for any policy month is equal to the amount of term insurance multiplied by the monthly term insurance rate. Monthly term insurance rates will be set by us from time to time, based on the insured's age, sex and underwriting class. But these rates will never be more than the maximum rates shown in the table on page 4.

**Payment on Final Date of Policy--** If the insured is alive on the Final Date of Policy, we will pay you the accumulation fund minus any policy loan and loan interest. Coverage under this policy will then end.

**Cash Value--** Your policy has a cash value while the insured is alive.

The cash value at any time during the first policy year will equal:

* The accumulation fund;

MINUS

* $35 times the number of full policy months left in that year;

MINUS

* Any policy loan and loan interest.

After the first policy year, the cash value at any time will equal:

* The accumulation fund;

MINUS

* The interest in excess of the guaranteed rate credited to the fund during the last 12 policy months;

MINUS

* Any policy loan and loan interest.

**Full and Partial Cash Withdrawal--** We will pay you all or part of the cash value after we receive your request at our Designated Office. The cash value will be determined as of the date we receive your request. If you request and are paid the full cash value, this policy and all our obligations under it will end. We may require surrender of this policy before we pay you the full cash value.

Each partial withdrawal of cash value must be at least $250. When a partial withdrawal is made, we will reduce the accumulation fund by the amount of the partial withdrawal. If Option A is in effect, we will also reduce the Specified Face Amount of Insurance by the amount of the

partial withdrawal; and a new page 3 will then be issued. We may require that you send us this policy to make the change. If you request partial withdrawal which would reduce the cash value to less than $500, we will treat it as a request for a full cash withdrawal. Also, if Option A is in effect and the Specified Face Amount of Insurance would be reduced to less than $50,000, during the first 5 policy years, or to less than $25,000 thereafter, we will treat your request as a request for a full cash withdrawal.

**Policy Loan--** You may also get cash from us by taking a policy loan. If there is an existing loan you can increase it. The most you can borrow at any time is the cash value on the next monthly anniversary, less the monthly deduction for the following month.

Loan interest is charged daily at the rate of 8% a year, and is due at the end of each policy year. Interest not paid within 31 days after it is due will be added to the amount of the loan. It will be added as of the due date and will bear interest at the same rate as the rest of the loan.

A loan will affect the interest rate we credit to amounts over $1,000 in the accumulation fund (see "Interest Rate" on page 6).

**Loan Repayment--** You may repay all or part (but not less than $25) of a policy loan at any time while the insured is alive and this policy is in force. If any payment you make to us is intended as a loan repayment, rather than a premium payment, you must tell us this when you make the payment.

Failure to repay a policy loan or to pay loan interest will not terminate this policy unless the accumulation fund, minus the policy loan and loan interest, is insufficient to pay the monthly deduction due on a monthly anniversary. In that case, the Grace Period provision will apply (see page 8).

**Deferment--** We may delay paying a full or partial cash withdrawal for up to 6 months from the date we receive a request for payment. If we delay for 30 days or more, interest will be paid from the date we receive the request at a rate not less than 3% a year.

We also may delay making a policy loan, except for a loan to pay a premium, for up to 6 months from the date you request the loan.

## Premiums

**Premium Payments--** Premiums may be paid at our Designated Office or to our sales representative. A receipt signed by our President or Secretary and countersigned by the sales representative will be given for a premium paid to the sales representative.

The first premium is due on the date of policy and will be credited as of that date. No insurance will take effect before the first premium is paid. Other premiums may be

paid at any time while the policy is in force and before the Final Date of Policy and in any amount and subject to the limits described below.

We will send premium notices, if you request in writing, according to the planned premium shown on page 3. You may skip planned premium payments or change their frequency and amount if the accumulation fund is large enough to keep your policy in force.

402-82 (85)                                    7

AAAAAJ

**Premiums (Continued)**

**Limits--** The first premium may not be less than the planned premium shown on page 3. Each premium payment after the first must be at least $250 ($50 for a Check-O-Matic payment).

We may increase these minimum premium limits. No increase will take effect until 90 days after notice is sent.

The total premiums paid in a policy year may not exceed the maximum we set for that year.

**Grace Period--** If the accumulation fund on any monthly anniversary, minus any policy loan and loan interest, is less than the monthly deduction for that month, there will be a grace period of 61 days after that anniversary to pay an amount that will cover the monthly deduction. We will send you a notice at the start of the grace period. We will also send a notice to any assignee on our records.

If we do not receive a sufficient amount by the end of the grace period, your policy will then end without value.

If the insured dies during the grace period, we will pay the insurance proceeds minus any overdue monthly deduction.

**Reinstatement--** If the grace period has ended and you have not paid the required premium and have not surrendered your policy for its cash value, you may reinstate this policy while the insured is alive if you:

1. Ask for reinstatement within 3 years after the end of the grace period;

2. Provide evidence of insurability satisfactory to us;

3. Pay a sufficient amount to keep the policy in force at least 2 months after the date of reinstatement.

4. If the grace period began during the first policy year, pay: (a) an amount sufficent to cover the unpaid portion of the charges applicable during the first 12 policy months; plus (b) interest on such amount to the date of reinstatement at the rate of 6% a year.

The effective date of the reinstated policy will be the monthly anniversary following the date we approve the reinstatement application. If we approve it on a monthly anniversary, the effective date will be that anniversary.

## Ownership and Beneficiary

**Owner--** As owner, you may exercise all rights under your policy while the insured is alive. You may name a contingent owner who would become the owner if you should die before the insured.

**Change of Ownership--** You may name a new owner at any time. If a new owner is named, any earlier choice of a contingent owner, beneficiary, contingent beneficiary or optional income plan will be canceled, unless you specify otherwise.

**Beneficiary--** The beneficiary is the person or persons to whom the insurance proceeds are payable when the insured dies. You may name a contingent beneficiary to become the beneficiary if all the beneficiaries die while the insured is alive. If no beneficiary or contingent beneficiary is named, or if none is alive when the insured dies, the owner (or the owner''s estate) will be the beneficiary. While the insured is alive, the owner may change any beneficiary or contingent beneficiary.

If more than one beneficiary is alive when the insured dies, we will pay them in equal shares, unless you have chosen otherwise.

**How to Change the Owner or the Beneficiary--** You may change the owner, contingent owner, beneficiary or contingent beneficiary of this policy by written notice or assignment of the policy. No change is binding on us until it is recorded at our Designated Office. Once recorded, the change binds us as of the date you signed it. The change will not apply to any payment made by us before we recorded your request. We may require that you send us this policy to make the change.

**Collateral Assignment--** Your policy may be assigned as collateral. All rights under the policy will be transferred to the extent of the assignee's interest. We are not bound by any assignment unless it is in writing and is recorded at our Designated Office. We are not responsible for the validity of any assignment.

**The Contract--** This policy includes any riders and, with the application attached when the policy is issued, makes up the entire contract. All statements in the application will be representations and not warranties. No statement will be used to contest the policy unless it appears in the application.

**Limitation on Sales Representative's Authority--** No sales representative or other person except our President, a Vice-President, or the Secretary may (a) make or change any contract of insurance; or (b) make any binding promises about policy benefits; or (c) change or waive any of the terms of this policy. Any change is valid only if made in writing and signed by our President, a Vice-President, or the Secretary.

**Incontestability--** We will not contest the validity of your policy after it has been in force during the insured's lifetime for 2 years from the date of policy. We will not contest the validity of any increase in the death benefit after such increase has been in force during the insured's lifetime for 2 years from its effective date.

**Suicide--** The insurance proceeds will not be paid if the insured commits suicide, while sane or insane, within 2 years from the date of policy. Instead we will pay the beneficiary an amount equal to all premiums paid, without interest, less any policy loan and loan interest and less any partial cash withdrawals. If the insured commits suicide, while sane or insane, more than 2 years after the date of this policy but within 2 years from the effective date of any increase in the death benefit, our liability with respect to such increase will be limited to its cost.

**Age and Sex--** If the insured's age or sex on the date the policy is not correct as shown on page 3, we will adjust the benefits under this policy. The adjusted benefits will be those that the premiums paid would have provided at the correct age and sex.

**Nonparticipation--** This policy is not eligible for dividends; it does not participate in any distribution of our surplus.

**Computation of Values--** The minimum accumulation fund, and policy reserves are computed using interest at the rate of 4% a year. These values and the maximum term insurance rates shown on page 4 are based on the 1958 Commissioners Standard Ordinary Mortality Table, age last birthday for male lives. For female lives, they are based on that table set back 3 years at ages 15 and older and on the female extension of that table at ages under 15.

We have filed a detailed statement of the method of computation with the insurance supervisory official of the state in which this policy is delivered. The values under this policy are equal to or greater than those required by the law of that state.

**Annual Reports--** Each year we will send you a report showing the current death benefit, accumulation fund and cash value for this policy.

It will also show the amount and type of credits to and deductions from the accumulation fund during the past policy year.

The report will also include any other information required by state laws and regulations.

**Illustration of Future Benefits--** At any time, we will provide an illustration of the future benefits and values under your policy. You must ask in writing for this illustration and pay the service fee set by us.

The insurance proceeds when the insured dies, or the amount payable on the Final Date of Policy, instead of being paid in one sum may be applied under one or more of the following income plans. Also, at any time before the Final Date and while the insured is alive, you may ask us to:

(a) Apply the full cash value of this policy under a non-life income plan;

or

(b) Apply the accumulation fund of this policy, minus any policy loan and loan interest, under a life income plan.

## Non-Life Income Plans

**Option 1.** *Interest Income*
The amount applied will earn interest which will be paid monthly. Withdrawals of at least $500 each may be made at any time by written request.

**Option 2.** *Instalment Income for a Stated Period*
Monthly instalment payments will be made so that the amount applied, with interest, will be paid over the period chosen (from 1 to 30 years).

**Option 2A.** *Instalment Income of a Stated Amount*
Monthly instalment payments of a chosen amount will be made until the entire amount applied, with interest, is paid.

## Life Income Plans

**Option 3.**
*Single Life Income--Guaranteed  Payment Period*
Monthly payments will be made during the lifetime of the payee with a chosen guaranteed payment period of 10, 15 or 20 years.

**Option 3A.** *Single Life Income--Guaranteed  Return*
Monthly payments will be made during the lifetime of the payee. If the payee dies before the total amount applied under this plan has been paid, the remainder will be paid in one sum as a death benefit.

**Option 4.** *Joint and Survivor Life Income*
Monthly payments will be made jointly to two persons while they are both alive and will continue during the remaining lifetime of the survivor. A total payment period of 10 years is guaranteed.

**Other Frequencies and Plans--** Instead of monthly payments, you may choose to have payments made quarterly, semiannually or annually. Other income plans may be arranged with us.

**Choice of Income Plans--** A choice of an income plan for insurance proceeds made by you in writing and recorded by us while the insured is alive will take effect when the insured dies. A choice of an income plan for the amount payable on the Final Date of Policy will take effect on such date. All other choices of income plans will take effect when recorded by us or later, if requested. When an income plan starts, we will issue a contract that will describe the terms of the plan. We may require that you send us this policy. We may also require proof of the payee's age. Income plans for insurance proceeds may be chosen:

1. By you during the lifetime of the insured.

2. By the beneficiary, within one year after the date the insured died and before any payment has been made, if no election was in effect on the date of death.

Income plans for the amount payable on the Final Date of Policy may be chosen by you:

1. On or before the Final Date of Policy.

2. Within one year after the Final Date of Policy and before any payment has been made.

A choice of an income plan will not become effective unless each payment under the plan would be at least $50.

**Limitations--** If the payee is not a natural person, the choice of an income plan will be subject to our approval. An assignment for a loan will modify a prior choice of income plan. The amount due the assignee will be payable in one sum and the balance will be applied under the income plan. Income plan payments may not be assigned and, to the extent permitted by law, will not be subject to the claims of creditors.

**Income Plan Rates--** Amounts applied under non-life income plans will earn interest at a rate we set from time to time. That rate will never be less than 3% a year. Life income plan payments will be based on a rate set by us and in effect on the date the amount to be applied becomes payable.

404-82                                    11                                    AAAAAM

Page 12 of 26 received at 2/1/2008 11:25:28 AM [Eastern Standard Time] on server AS-LINYFAXSVR04.

Page 13 of 26 received at 2/1/2008 11:25:28 AM [Eastern Standard Time] on server AS-LINYFAXSVR04.

Case 1:07-cv-09548-LTS-GWG    Document 19-2    Filed 02/01/2008    Page 12 of 25

**Optional ... (Continued)**

**Minimum Payments under Optional Income Plans**--Monthly payments under Options 2, 3, 3A and 4 for each $1,000 applied will not be less than the amount shown in the following Tables.

| Option 2. *Instalment Income for a Stated Period* | | | | | |
|---|---|---|---|---|---|
| Monthly Payment for each $1,000 Applied | | | | | |
| Years Chosen | Minimum Amount of Each Monthly Payment | Years Chosen | Minimum Amount of Each Monthly Payment | Years Chosen | Minimum Amount of Each Monthly Payment |
| 1 | $84.47 | 11 | $8.86 | 21 | $5.32 |
| 2 | 42.86 | 12 | 8.24 | 22 | 5.15 |
| 3 | 28.99 | 13 | 7.71 | 23 | 4.99 |
| 4 | 22.06 | 14 | 7.26 | 24 | 4.84 |
| 5 | 17.91 | 15 | 6.87 | 25 | 4.71 |
| 6 | 15.14 | 16 | 6.53 | 26 | 4.59 |
| 7 | 13.16 | 17 | 6.23 | 27 | 4.47 |
| 8 | 11.68 | 18 | 5.96 | 28 | 4.37 |
| 9 | 10.53 | 19 | 5.73 | 29 | 4.27 |
| 10 | 9.61 | 20 | 5.51 | 30 | 4.18 |

To determine the minimum amount for a quarterly payment, multiply the above monthly payment by 2.99; for semiannual by 5.96; and for annual by 11.84.

| Option 3. *Single Life Income*- Guaranteed Payment Period | | | | | | Option 3A. *Single Life Income*- Guaranteed Return | |
|---|---|---|---|---|---|---|---|
| Minimum Amount of each Monthly Payment for each $1,000 Applied | | | | | | Minimum Amount of each Monthly Payment for each $1,000 Applied | |
| Payee's Age | Guaranteed Payment Period | | | | | | |
| | 10 Years | | 15 Years | | 20 Years | | |
| | Male | Female | Male | Female | Male | Female | Male | Female |
| 50 | $4.50 | $4.09 | $4.40 | $4.05 | $4.28 | $3.99 | $4.24 | $3.96 |
| 55 | 4.96 | 4.49 | 4.80 | 4.41 | 4.58 | 4.31 | 4.61 | 4.29 |
| 60 | 5.53 | 4.99 | 5.25 | 4.86 | 4.90 | 4.67 | 5.07 | 4.72 |
| 65 | 6.25 | 5.67 | 5.75 | 5.40 | 5.18 | 5.03 | 5.67 | 5.28 |
| 70 | 7.11 | 6.55 | 6.23 | 5.99 | 5.39 | 5.31 | 6.46 | 6.04 |
| 75 | 8.03 | 7.60 | 6.61 | 6.48 | 5.49 | 5.45 | 7.54 | 7.06 |
| 80 | 9.87 | 8.60 | 6.81 | 6.74 | 5.51 | 5.50 | 9.01 | 8.44 |
| 85 and over | 9.40 | 9.22 | 6.86 | 6.84 | 5.51 | 5.51 | 11.14 | 10.26 |

| Option 4. *Joint and Survivor Life Income*- Guaranteed period of 10 Years | | | |
|---|---|---|---|
| Minimum Amount of each Monthly Payment for each $1,000 Applied | | | |
| Age of Both Payees | One Male and One Female | Two Males | Two Females |
| 50 | $3.77 | $3.92 | $3.67 |
| 55 | 4.09 | 4.27 | 3.97 |
| 60 | 4.52 | 4.73 | 4.37 |
| 65 | 5.10 | 5.35 | 4.91 |
| 70 | 5.90 | 6.18 | 5.68 |
| 75 | 6.95 | 7.21 | 6.72 |

On request, we will provide additional information about amounts of premium payments.

# Rider: Disability Waiver Benefit

*This rider is part of the policy if it is referred to on page 3.*

This rider provides that, if the insured becomes totally disabled before the policy anniversary at age 60 and the disability continues for a period of at least 6 months, we will waive the monthly deductions for this policy while the insured remains totally disabled. If this total disability continues without interruption until the policy anniversary at age 65, all future monthly deductions will be waived as they fall due.

Monthly deductions will be made until we approve your claim. Upon approval, we will restore the value of any monthly deductions made during the period of total disability.

**Date of Rider**— The date of this rider is the date of this policy.

**Definition of Total Disability**-- Total disability means an incapacity which:

1.  Results from bodily injury or disease;

                              and

2.  Prevents the insured from doing any work for income or profit. During the first 24 months of total disability, work means the regular occupation of the insured. After that time it means any occupation for which the insured is or becomes reasonably fitted. If the insured was a student when total disability began, going to school is the insured's regular occupation.

The total and permanent loss of the sight of both eyes or the loss by severance of both hands or both feet, or one hand and one foot, will be considered total disability.

**Risks Not Covered**-- This rider will not cover a disability which:

1.  Began before the date of this rider;

                              or

2.  Ocurred, while the insured was in any armed forces, as a result of any war, or warlike action in time of peace.

**Proof of Disability**— Written notice and proof that total disability has existed continuously for 6 months must be given to us while the insured is alive and totally disabled. As part of any proof we may require medical examinations of the insured by physicians we name.

We may also require proof of continued total disability at reasonable intervals, including medical examinations of the insured by physicians we name. After 2 years of total disability, proof will not be required more than once a year. If notice or proof is late, we will accept it if it is given as soon as reasonably possible. If notice or proof is not given as soon as reasonably possible, we will not waive any monthly deduction made more than one year before the date that written notice or proof of disability is given to us.

When the insured is no longer totally disabled or if proof of total disability is not given when required, we will no longer waive the monthly deductions.

**Effect on Policy Provisions**-- While the insured is totally disabled, you may not increase the death benefit under this policy by increasing the Specified Face Amount of Insurance. You may, however, change the death benefit option subject to the provisions of the policy. The accumulation fund will continue to earn interest as described in the policy.

If you wish, you may continue to pay premiums into the accumulation fund while the insured is disabled. The 9% expense charge will be deducted from these premiums.

**Incontestability**-- We will not contest the validity of this rider unless total disability of the insured occurred within 2 years from the date of the rider.

**Termination**-- This rider will end on the earlier of: (a) the end of the grace period; or (b) the policy anniversary on which the insured is age 60.

You may end this rider on any monthly anniversary by sending us a written request and this policy. We will make the change and return the policy.

**Cost of Rider**-- While this rider is in force, its cost will be deducted monthly from the accumulation fund. The cost is a percentage of the total monthly deduction for the cost of term insurance and any other benefits and for other charges described in the policy. The monthly cost of this rider will be set by us from time to time, based on the insured's age and sex. It will never be more than the maximum cost according to the table on the next page.

## Endorsement

When this rider is a part of the policy, the accumulation fund referred to in the "Cost of Term Insurance" provision (shown on page 6) is the accumulation fund at the beginning of the policy month before the deductions for the monthly cost of term insurance and for this benefit, but after the deductions for other riders and any other charges.

72W-82 MIAC

*Christine N. Markussen*
Christine N. Markussen
President and Secretary

BAAAUA

Page 15 of 26 received at 2/1/2008 11:25:28 AM [Eastern Standard Time] on server AS-LINYFAXSVR04.

## Rider: Disability Waiver Benefit (Continued)
### Table of Guaranteed Maximum Costs
### (See "Cost of Rider" Provision)

| Age at Beginning of Rider Year | Maximum Monthly Cost of Rider as a Percentage of the Total Monthly Deduction | Age at Beginning of Rider Year | Maximum Monthly Cost of Rider as a Percentage of the Total Monthly Deduction |
|---|---|---|---|
| 5 | 5.5% | 33 | 8.5% |
| 6 | 5.5% | 34 | 9.0% |
| 7 | 5.5% | 35 | 9.5% |
| 8 | 5.5% | 36 | 10.0% |
| 9 | 5.5% | 37 | 10.5% |
| 10 | 5.5% | 38 | 11.0% |
| 11 | 5.5% | 39 | 11.5% |
| 12 | 5.5% | 40 | 12.0% |
| 13 | 5.5% | 41 | 12.5% |
| 14 | 5.5% | 42 | 13.5% |
| 15 | 5.5% | 43 | 14.5% |
| 16 | 5.5% | 44 | 15.5% |
| 17 | 5.5% | 45 | 16.5% |
| 18 | 5.5% | 46 | 17.5% |
| 19 | 5.5% | 47 | 18.5% |
| 20 | 5.5% | 48 | 19.5% |
| 21 | 5.5% | 49 | 20.5% |
| 22 | 5.5% | 50 | 21.5% |
| 23 | 5.5% | 51 | 22.5% |
| 24 | 5.5% | 52 | 24.0% |
| 25 | 5.5% | 53 | 25.5% |
| 26 | 5.5% | 54 | 27.5% |
| 27 | 6.0% | 55 | 29.5% |
| 28 | 6.0% | 56 | 31.5% |
| 29 | 6.5% | 57 | 33.5% |
| 30 | 7.0% | 58 | 36.0% |
| 31 | 7.5% | 59 | 39.0% |
| 32 | 8.0% | | |

72W-82 MIAC
72W-82 (85) MIAC
72W-89

BAAAAB

**Metropolitan Insurance and Annuity Company**

## Endorsement

As of its date, this policy is revised as follows:

**The Contract--**

The following will replace this provision:

This policy includes any riders. The policy and riders, with the application attached at issue, and any application added after issue, make up the whole contract. All statements in the application are representations and not warranties. No statement will be used to contest the policy unless it is in the application.


*Christine N. Markussen*

Christine N. Markussen
Vice-President and Secretary

R.S. 828 MIAC   July 1983

                                                                              CAAHCW

Page 17 of 26 received at 2/1/2008 11:25:28 AM [Eastern Standard Time] on server AS-LINYFAXVR04.

Case 1:07-cv-09548-LTS-GWG    Document 15-2    Filed 02/01/2008    Page 16 of 25

**Metropolitan Insurance and Annuity Company**

## Endorsement

In order to ensure that the policy's death benefit is treated as life insurance proceeds under federal legislation, this policy is amended as of its date as follows:

I. The "Death Benefit" provision on page 5 is deleted and the following is substituted:

**Death Benefit** - The death benefit under this policy will be either (1) or (2) below, whichever is chosen and is in effect at the time of death, but in no event less than the minimum death benefit.

1. **Option A:** The Specified Face Amount of Insurance.

2. **Option B:** The Specified Face Amount of Insurance.

PLUS

The accumulation fund on the date of death.

**Minimum Death Benefit**- In no event will the death benefit be less than the amounts described below:

| Age on Date of Death | Minimum Death Benefit as a Percentage of the Accumulation Fund |
|---|---|
| 40 or younger | 250% |
| 41-45 | 243-215 |
| 46-50 | 209-185 |
| 51-55 | 178-150 |
| 56-60 | 146-130 |
| 61-65 | 128-120 |
| 66-70 | 119-115 |
| 71-75 | 113-105 |
| 76-90 | 105 |
| 91-95 | 104-100 |

The minimum death benefit will decrease uniformly within the age ranges shown.

II. The "Limits" provision on page 8 is amended by adding the following the third paragraph:

When we set the maximum for total premiums paid in a policy year, we will take account of requirements in federal legislation. We will return to you any premium paid in a policy year which exceeds the maximum.

Christine N. Markussen
Vice-President and Secretary

R.S.926 MIAC        January 1985        CAAHCC

**Metropolitan Insurance and Annuity Company**

## Endorsement

The following sentence is substituted for the first sentence in the Computation of Values provision:

The minimum accumulation fund, cash values, and policy reserves are computed using interest at the rate of 4% a year.


*Christine N. Markussen*
Christine N. Markussen
Vice-President and Secretary

R.S. 792 MIAC      July 1983

CAAHDI

**Metropolitan Life**
AND AFFILIATED COMPANIES

(For H.O. Use Only)

0 2 1 1 0    0 1 8 5 8

Metropolitan Life
Insurance Company
Metropolitan Insurance and
Annuity Company
Metropolitan Tower Life
Insurance Company
MetLife Security
Insurance Company

Check One Box
☐ As a Gift,
☐ For Value
☑ Received.

_Calvin Cho diff. Of Ben Ben Trst_ hereby assign Policy No. 876 _, 115 , 1025 , UL_
Issued by Metropolitan on the life of _Alexander R Piper III_ ............. Settle
with all the proceeds thereof and all sums of money, interest, benefits, rights, powers, privileges, and advantages whatsoever
thereunder, including specifically the right to surrender said policy, unto

_Alexander R Piper III_
Bennes

Address: _Box 327_ _____ _South Egremont_ _MA_ _01258_
     Number        Street          City or Town    State       Zip Code
_none_ _____
Relationship to Insured      and to the estate, successors, or assigns of the assignee,

Tax Identification Number of Assignee
(This is an Employer's Identification Number or an Individual's Social Security Number) If more than one assignee is named,
state number of assignee listed first.
[0] [0] [8] [3] [6] [2] [7] [6] [6]

This assignment is subject to any existing indebtedness to the Metropolitan under this Policy Note For an annuity contract, pol-
icy means contract and insured means annuitant. Metropolitan means the Metropolitan Life Insurance Company However, if the
policy was issued by one of its affiliates listed above, Metropolitan means that affiliate.

Dated at _New York NY_
on _____ _1-22-19 91_

Witness _R B Turner_             Signature _Rex ___ ___ ___ ___ ___ ____
Witness _____             _Alex R Piper III_
Witness _____             Signature

(If Corporation Place Corporate Seal Here)

**Certification**

I certify, under penalties of perjury, that the taxpayer identification number shown above is that of the assignee
and that the assignee ☐ is ☐ is not subject to a backup withholding order under section 3406(a)(1)(C) of
the Internal Revenue Code.

Date _1/22/91_            _Alex R Piper III_
Signature of assignee or person authorized to sign tax return
for assignee. If latter, state title or relationship.

State of _New York_
County of _New York_    On this _2ND_ day of _JANUARY_ 19 _91_ before me
to me known to be the individual    personally came _____
   acknowledged that    described in and who executed the foregoing instrument and
            executed the same

MICHAEL ABBE III
Notary Public, State of New York
No. 30-5001260
Qualified in Nassau County
Commission Expires September 30, 1991

Recorded and filed at the Home or Head Office of the Metropolitan.
Metropolitan assumes no obligation as to the validity and sufficiency of this assignment, and does not pass upon its legality,
but reserves the right to demand proof of interest in case of claim by assignee.
This assignment will not be binding upon Metropolitan until it is filed with Metropolitan at its Home or Head Office.

_____ 19___

**Forwarding Branch/District**

| Number | Name | Secretary | |
|--------|------|-----------|--|
| _ON1_ | _Mid America LBAg_ | | _133 1_ |

If in force in another Branch/District enter: _____
Branch/District Number and Name            Agency _P_

For Head Office Use   Checked by _____     Duplicate sent to _____    Date _____
020-ABSOLUTE (12-87) Printed in U.S.A.          **Absolute Assignment**         M00000774 (1287)

Name of Insured/Annuitant
ALEXANDER R PIPER III  0 0 2 2 N S 0 T 1 2 N

Agency  735                                      102396?
                                                 Date of this Form
District/Branch  ON1                             2 13 87

To □ Metropolitan Life Insurance Company:       Policy/Contract Number
    ☒ Metropolitan Insurance and Annuity Company: **Application Amendment**    876 115 023 UL
    □ Metropolitan Tower Life Insurance Company:

I amend the application referred to above, as follows:                   **Metropolitan**
Item

| Plan | Amended Answer |
|---|---|
| Initial or Face Amount of Insurance | $ _____ Insurance on Proposed Insured |
| Disability Waiver of Premiums Benefit | □ Add _____ □ Delete |
| Family Income Benefit | $ _____ per month to _____ th Policy Ann. □ Delete |
| Level Term Benefit | _____ times Face Amt. or Amt. $ _____ □ 10 Yrs. □ 15 Yrs. □ Delete |
| Guarantee Issue Rider | Amount $ _____ □ Delete |
| Accidental Death Benefit | □ Add Benefit _____ □ Delete |
| Income Benefit on Spouse | $ _____ per month to _____ th Policy Ann. □ Delete |
| Cost of Living Term Insurance Benefit | □ Add _____ □ Delete |
| Return of Cash Value Benefit | □ Add _____ □ Delete |
| Children's Term Insurance Benefit | Amount $ _____ □ Delete |
| Spouse Term Insurance Benefit | Amount $ _____ □ Delete |
| Surviving Spouse Term Insurance Benefit | □ Add _____ □ Delete |
| Date of Birth | _____ Month ____ Day ____ Year |

My application dated _____ is also to be used as the application for the policy referred to above.
X  I have reexamined the statements and answers in the application referred to above. Except as amended by this form, those answers
   remain true and complete to the best of my knowledge and belief.
This application amendment is a part of the application referred to above and is subject to the agreements in that application. The applica-
tion and this amendment are part of the policy/contract to which they are attached.
To the best of my knowledge and belief, the statements and answers in the application as amended by this form are true and complete as of
the date this form is signed. There are no facts or circumstances which would require a change in the answers in the application, except as
shown above.

| Witness (Licensed Resident Agent) | Place | Mo. Day Yr. | Signature |
|---|---|---|---|
| X | New York NY | 5-15-8 | (A) Insured/Annuitant/Applicant X Alex R Piper III |
| Witness to Signature in (A) | | | |
| Witness to Signature in (B) | | | (B) Spouse (if spouse signed application) |
| Witness to Signatures in (C) or (D) | | | (C) Owner (if other than (A) above) |

If Owner is a firm, corporation or trust, enter full name on line (C) and have one or    (C) Owner (if other than (A) above)
more partners, officers or trustees sign on line (D), and give their titles.
0642 82-A1 (8-84) Printed in U.S.A.                                      (D) X Raymond LGCola
Life

Return signed forms to:  P.I.I. Underwriting & Issue
                         Admin. Support Unit-COFCML                      Head Office/Home Office
                                                                         Unit

**Part of Application for Aetna Flexible Insurance Policy**

The spaces below are for answers of person to be examined only. Nothing but the question of each person should be recorded.

**1. Name of Person to be Examined.**

Alexander      R      Piper   Jr.

First Name          Middle Initial          Last Name

**2. Cigarette Smoking**

Date you last smoked a cigarette  ☐ _____   ☒ never smoked

(Date)

**3. Name and address of your personal physician, practitioner or health facility.**

Ira Mason   ,  60TH St  Park & Lex.     N.Y. NY. 10021

**4. In past 5 years, has any physician, practitioner or health facility examined, advised or treated you?  Yes ☐   No ☐**
   If Yes, give details below for each instance.

| Name and Address of each Physician, Practitioner and Health Facility | Dates | Your Symptoms or Ailments, or Other Reasons For Consultation | Diagnosis, Treatment or Advice Given. |
|---|---|---|---|
| | | | |

**5. Have you EVER received treatment, attention, or advice from any physician, practitioner or health facility for, or been told by any physician, practitioner or health facility that you had:**

(a) Disease of heart, arteries, or veins; chest pain?   Yes ☐  No ☒

(b) High blood pressure (hypertension)?   Yes ☐  No ☒

(c) Cancer, tumor or polyp? (If Yes, also indicate type and part of body affected.)   Yes ☐  No ☒

(d) Diabetes; sugar, albumin, or blood in urine?   Yes ☐  No ☒

(e) Asthma, bronchitis, tuberculosis, or other lung disease?   Yes ☐  No ☒

(f) Ulcers; colitis; or disorder of liver, stomach, gall bladder, or intestines?   Yes ☐  No ☒

(g) Nervous breakdown, or any mental or nervous disorder?   Yes ☐  No ☒

(h) Epilepsy, unconsciousness, or dizziness?   Yes ☐  No ☒

(i) Kidney stones or any disease of the kidney, bladder, or other part of urinary tract?   Yes ☐  No ☒

(j) Any disease of the prostate or testes if a male; of the uterus, ovaries or breasts if a female?
   (If hysterectomy or breast surgery, including biopsy, was performed, also indicate
   whether entire organ was removed, specific diagnosis, and how long hospitalized.)   Yes ☐  No ☒

(k) Arthritis, rheumatic fever, gout; paralysis or disease or deformity of the bones,
   muscles or joints?   Yes ☐  No ☒

(l) Disease of glands (thyroid, lymph, etc.); or anemia, leukemia or other blood disease?   Yes ☐  No ☒

(m) Disease or impairment of eyes or ears?   Yes ☐  No ☒

**6. Have you ever had a surgical operation not revealed above, or gone to a hospital, clinic, dispensary or sanatorium for observation, examination or treatment not revealed above?**   Yes ☐  No ☒

**7. In past 5 years:**

(a) Have you had any electrocardiogram, X-ray, or other medical test?   Yes ☒  No ☐
   (If Yes, name test and give reasons, dates, name and address of each physician or other
   practitioner and each hospital, and results.)

(b) Have you received, or applied for, disability or hospitalization benefits from any source?   Yes ☐  No ☒
   (i) If Yes, give dates of onset (and of termination if fully recovered), reason, extent of disability and
       present status, (ii) If claim was made to Metropolitan, so indicate.

**8. (a)** Have you been aware of any impairment of health not revealed above? (If Yes, give details.)   Yes ☐  No ☒

(b) Are you now contemplating any surgical operation, or are you planning to seek other medical
   advice or treatment? (If Yes, give details.)   Yes ☐  No ☒

(c) In the past 6 months, have you taken any prescribed medication or have you been advised to
   restrict your diet or living routine? (If Yes, state details, who recommended, and give reason.)   Yes ☐  No ☒

009K-A (3-85)

Best Quality                                                                    Best Quality

Best Quality
Best Quality

Part 1 (continued)        0 3 2 5 8    0 3 5 7 9

**9.** (a) Have you ever used heroin, cocaine, barbiturates or other controlled substances, except as medication prescribed by a physician or other licensed practitioner?   Yes ☐  No ☒

(b) Have you ever received treatment or advice from a physician or other practitioner regarding the use of alcohol, or the use of drugs except for medicinal purposes; or received treatment or advice from an organization which assists those who have an alcohol or drug problem?   Yes ☐  No ☒

**10.** Did either of your parents or any of your brothers or sisters ever have heart or coronary artery disease, high blood pressure, cancer, diabetes or mental disease? (If Yes, give details for each person, including age at onset, in item 11.)   Yes ☒  No ☐

| 11. Family Record | Age if Living | Age at Death | Details to Item 10 and/or Cause of Death |
|---|---|---|---|
| Father | | 69 | HEART |
| Mother | 76 | | |
| Brothers | | 18 | DROWNED |
| Sisters | | 48 | |

For any Yes answer to Items 5 through 9 give the following details

| Item No. | Name and Address of Each Physician, Practitioner and Health Facility | Dates and Occasions | Nature and Severity of Condition, Frequency of Attacks, Specific Diagnosis and Treatment |
|---|---|---|---|
| 7(a) | IRA MASON  E 60TH  NYC | DEC 1984 | EXAM |

I have read the answers to Questions 2-11 before signing. They have been correctly written, as given by me, and are true and complete to the best of my knowledge and belief. There are no exceptions to any such answers other than as written.

| Witness to Signature | Place | Mo. | Day | Yr. | Signature |
|---|---|---|---|---|---|
| Mary C. Gonzales R.N. C.H.E./L.E.I. | | 12 | 9 | 86 | Alex R. Pages |

Person being Examined

Best Quality
Best Quality



Best Quality

Best Quality

Q 3 0 5 N   Q 3 S 7 S   1093961

**12. Owner, if other than Proposed Insured?**
(Full Name of Person or Firm)        Relationship to        Social Security #
                                      Proposed Insured       or Tax I.D. #
                                                             Date of birth

**13.** (Full Name)        Relationship to        Social Sec. #
                           Proposed Insured       or Tax I.D. #
                                                  Date of birth

**14.** Beneficiary, if Proposed Insured need not be completed if an Owner has been named in item 12.
(a) Revocable Beneficiary
(Full Name)        Relationship to        Date shown
                   Proposed Insured
(b) Revocable Contingent Beneficiary
(Full Name)        Relationship to        Date of birth
                   Proposed Insured

(c) ☐ Check here if all present and future children, born of the marriage of Proposed Insured and current spouse are to be included as contingent beneficiaries.
(d) Address of Beneficiary, or Contingent, Beneficiary, if different from address in item 2.

**NOTE:** (i) Unless indicated otherwise, if more than one beneficiary of any insured is alive when that insured dies, we will pay them in equal shares. If no beneficiary is alive when an insured dies, the contingent beneficiary will become the beneficiary.
(ii) A check in item (c) above is valid only if the proposed insured's current spouse is named as the beneficiary.

**Items 15 through 25 apply to each person named in item 1.**

**15.** Is any other application for Life or Health insurance now pending or planned on any person in this or any other company?  Yes ☐  No ☒
If yes, is it in addition to the insurance applied for here?  Yes ☐  No ☐

**16.** Has any person been outside the U.S. or Canada in the past 2 years, or does any person intend to be in the next 12 months? (Other than vacation of one month or less.)  Yes ☐  No ☒

**17.** Has an application for a policy of Life or Health insurance on any person ever been declined, postponed, rated, modified or required an extra premium? If Yes, give date, name of person and company, type of insurance and reason.  Yes ☐  No ☒

**18.** In connection with the policy applied for, do you intend to borrow against, surrender or discontinue existing insurance or annuities (including Group) in force with this or any other insurer?  Yes ☐  No ☒

**19(a).** Give name, driver's license number and state of issue for Proposed Insured, Spouse, and Applicant for AAB if named in item 1.

**19(b).** Has any person over the age of 18 had a driving license suspended or revoked in the last 3 years, or been convicted of 3 or more moving violations in the last 3 years, or ever been convicted of driving while impaired or intoxicated?  Yes ☐  No ☒

**20.** Give details of each Yes answer in items 15 through 19.

| Item No. | Name | Date | Details |
|---|---|---|---|
| | | 12-66 | replacing | (IR) |

**21.** Has any person flown as a pilot, student pilot, crew member or passenger (except on a scheduled airline) in the last 2 years or does any person intend to do so in the next 12 months?  Yes ☐  No ☒
If Yes, complete the aviation questionnaire.

**22.** Has any person engaged in, or does any person plan to engage in, Automobile, Motorcycle or Power Boat Sports, Bobsledding, Ballooning, Scuba or Sky Diving, Hang Gliding (including Skate Sailing), Parachuting, etc.), Mountain Climbing, Parachuting, Snowmobile Racing or any other hazardous sport or hobby?  Yes ☐  No ☒
If Yes, complete the avocation questionnaire.

**23. Cigarette Smoking**
(a) Date Proposed Insured last smoked a cigarette
☐ _____ (Date)  ☐ never smoked
(b) Date Spouse or Applicant for AAB, if named in item 1, last smoked a cigarette.
☐ _____ (Date)  ☐ never smoked

**24.** Name and address of personal physician, practitioner or health facility used by:
(a) Proposed Insured
(b) Spouse or Applicant for AAB, if named in item 1.

**Best Quality** 9948-LTS-GWG   Document#2   Filed 02/01/2008   Page 25 of 25   TC93561

0 3 0 5 M   0 3 6 7 7

| 30. | Did any parent, brother or sister of the Proposed Insured, Spouse or Applicant for AWB, if named in Item 1 have heart or coronary artery disease, high blood pressure, cancer or diabetes? If Yes, give details for each person, including age at onset, as Item 31? | | Yes ☒ | No ☐ |

| 31a. Family Record of Proposed Insured | Age if Living | Age at Death | Details in Item 30 and/or Cause of Death | 31b. Family Record of Spouse or Applicant for AWB | Age if Living | Age at Death | Details in Item 30 and/or Cause of Death |
|---|---|---|---|---|---|---|---|
| Father | | 68 | heart | Father | | | |
| Mother | 76 | | | Mother | | | |
| Brothers  2 | 48 | 76 | drowned | Brothers | | | |
| Sisters | | | | Sisters | | | |

## Agreement

I have read this application and agree that all statements and answers are true
and complete to the best of my knowledge and belief. It is also agreed that:

1. The statements and answers in this application, including any in Parts B, D and E, are the basis of any policy issued.

2. No sales representative or other person except the President, Secretary or a Vice-President of Metropolitan may (a) make or change any contract of insurance; or (b) make any binding promises about insurance benefits; or (c) change or waive any of the terms of an application, receipt or policy. Any change is valid only if made in writing and signed by the President, Secretary, or a Vice-President of Metropolitan.

3. No information about any person to be insured will be considered to have been given to Metropolitan unless it is stated in this application.

4. Except as set forth in the Receipt and Temporary Insurance Agreement, Metropolitan will have no liability until a policy is delivered personally to the owner and the full first premium due is paid. The policy will then be in effect as of its date of issue. But it will not be in effect unless at the time it is delivered.

   (a) the condition of health of each person to be insured, and the Applicant if the Applicant's Waiver of Premiums Benefit is applied for, is the same as given in the application; and

   (b) no person to be insured, nor the Applicant if the Applicant's Waiver of Premiums Benefit is applied for, has received any medical advice or treatment from a physician or other practitioner since the date of this application.

| WITNESS (Licensed Resident Agent) | PLACE | Mo. Day Yr. | SIGNATURE |
|---|---|---|---|
| R B Dunn  Witness to Signature in (A) | N.Y. N.Y. | 12-1-86 | x [signature]  (A) Proposed Insured (Age 15 or Over) |
| Witness to Signature in (B) | | | (B) Spouse (if named in Item 1) |
| R B Dunn  Witness to Signature in (C) or (D) | | | (C) Owner (if named in Item 12) |

If Owner is a firm or corporation, enter on line (C) full business name as it appears in Item 12 and have one or more partners or officers (other than Proposed Insured) sign on line (D), and give their titles.

(D) [signature] Raymond D. Cohn

| Complete Only for a Juvenile Policy. Also, be sure to complete Item 12 and have Owner sign in (C) above. | |
|---|---|
| Witness to Signature in (E) | (E) Applicant (Juvenile Policy) |
| Witness to Signature in (F) | (F) Child (required only if a New York State resident and exact age is between 14½ and 15) |

Also to be signed below if Applicant is not a parent, guardian or person liable for child's support.
I consent to this application for insurance on the life of the Proposed Insured. I have read the answers in this application, and they are true and complete to the best of my knowledge and belief.

| Witness to Signature in (G) | (G) Parent, Guardian or Person Liable for Child's Support |
|---|---|

Best Quality                                                                    Best Quality

When you write to us, please give us your name, address and policy number. Please notify us promptly of any changes. We will write to you at your last known address.

Checks, drafts or money orders may be drawn to the order of Metropolitan Insurance and Annuity Company (or "MIAC"). They are received subject to the condition that they may be handled for collection in accordance with the practice of the collecting bank or banks. If we do not receive the full amount of any check, draft or money order, it will not constitute payment. All payments are to be made in U.S. currency.

Metropolitan Insurance and Annuity Company is a subsidiary of Metropolitan Life Insurance Company. This policy is solely the obligation of Metropolitan Insurance and Annuity Company.

Metropolitan Insurance and Annuity Company
Executive Office
One Madison Avenue
New York, N.Y. 10010-3690

Countersigned and Delivered _____ 19 _____ By _____

## Table of Contents

|  | Page |  | Page |  | Page |
|---|---|---|---|---|---|
| **Policy Specifications** | 3 | **Payments During Insured's Lifetime** | 7 | How to Change the Owner or the Beneficiary | 8 |
|  |  | Payment on Final Date of Policy | 7 | Collateral Assignment | 8 |
| **Table of Guaranteed Maximum Insurance Rates** | 4 | Cash Value | 7 | **General Provisions** | 9 |
|  |  | Full and Partial Cash Withdrawal | 7 | The Contract | 9 |
| **Understanding This Policy** | 5 | Policy Loan | 7 | Limitation on Sales Representative's Authority | 9 |
|  |  | Loan Repayment | 7 | Incontestability | 9 |
|  |  | Deferment | 7 | Suicide | 9 |
| **Payment When Insured Dies** | 5 |  |  | Age and Sex | 9 |
| Insurance Proceeds | 5 | **Premiums** | 7 | Nonparticipation | 9 |
| Death Benefit | 5 | Premium Payments | 7 | Computation of Values | 9 |
| Death Benefit Adjustment | 5 | Limits | 8 | Annual Report | 9 |
|  |  | Grace Period | 8 | Illustration of Future Benefits | 9 |
|  |  | Reinstatement | 8 |  |  |
| **Computation of Accumulation Fund** | 6 | **Ownership and Beneficiary** | 8 | **Optional Income Plans** | 11 |
| Accumulation Fund | 6 | Owner | 8 | Choice of Income Plans | 11 |
| Monthly Deduction | 6 | Change of Ownership | 8 | Limitations | 11 |
| Interest Rate | 6 | Beneficiary | 8 | Income Plan Rates | 11 |
| Cost of Term Insurance | 6 |  |  | Minimum Payments | 12 |

Any riders for additional benefits follow page 12.

## Flexible-Premium Life Insurance Policy

Life Insurance payable if the insured dies before the Final Date of Policy.
Accumulation Fund payable on the Final Date.
Adjustable death benefit.
Premiums payable while the insured is alive and before the Final Date of Policy.
Premiums must be sufficient to keep the policy in force.
Not eligible for dividends.

TRUE COPY
3/4/07

7-82 MIAC Printed in U.S.A.                                              AAAAAY

Page 26 of 26 received at 2/1/2008 11:25:28 AM [Eastern Standard Time] on server AS-LINYFAXSVR04.

TOTAL  P.26