UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

ESTATE OF ALEXANDER R. PIPER III;
and MARTHA PIPER, individually,

        Plaintiffs,

  -v-                                                 No. 07 Civ. 9548 (LTS)(GWG)

METROPOLITAN TOWER LIFE INSURANCE
COMPANY,

        Defendant.

----------------------------------------------------------x

**OPINION AND ORDER**

        The Estate of Alexander R. Piper III and Martha Piper ("Mrs. Piper" or "MP," and together with the Estate, "Plaintiffs"), bring this civil action asserting claims of breach of contract, negligence and unjust enrichment against Metropolitan Tower Life Insurance Company ("MetLife") in connection with MetLife's denial of Plaintiffs' claim for benefits under a life insurance policy that covered Mrs. Piper's spouse, Alexander R. Piper ("Mr. Piper" or "Decedent," and together with Mrs. Piper, "the Pipers"). The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332.

        Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Court has reviewed thoroughly and considered carefully all of the parties' submissions and, for the reasons explained below, Defendant's motion is granted.

B<small>ACKGROUND</small>

The following material facts are undisputed unless otherwise indicated. Defendant issued policy number 876 115 025 UL (the "Policy") on Decedent's life, effective February 1, 1987, in the face amount of $391,000.  (Affirmation of Ethan Leonard ("Leonard Affirm."), Ex. A, Copy of Policy at 1.)  Decedent was employed by Cohen, Cohn and Duffy at the time, and the Policy was issued to the Cohen, Cohn and Duffy Defined Benefit Trust ("CCDDBT") as owner.  (Leonard Affirm. Ex. B, MP Dep. 87: 12-24.)  On or about May 1, 1988, the face amount of the Policy was increased from $391,000 to $473,000.  (MP Aff. ¶ 5.) Ownership of the Policy was assigned from CCDDBT to Decedent on or about January 22, 1991. (Id. ¶ 6.)  Plaintiff Martha Piper was designated as the sole beneficiary of the Policy.  (Stowe Aff. ¶ 5.)

Under the terms of the Policy, Defendant agreed to provide life insurance until the Final Date of the Policy, provided that premiums were sufficient to keep the Policy in force. (Stowe Aff. ¶ 6, Ex. A at ML PIPER 00008.)  The Policy specifications page, which follows the cover page of the Policy document, displays the following legend in capital letters:

> THIS POLICY PROVIDES LIFE INSURANCE COVERAGE UNTIL THE FINAL DATE IF SUFFICIENT PREMIUMS ARE PAID.  THE PLANNED PREMIUM SHOWN BELOW MAY NEED TO BE INCREASED TO KEEP THIS POLICY AND COVERAGE IN FORCE.
>
> PLANNED PREMIUM OF $3097.46 - PAYABLE SEMI-ANNUALLY.

(Stowe Aff. ¶ 7, Ex. A at ML PIPER 00009.)  The Policy, as a Flexible Premium Life Insurance Policy, further provided:

> We will send premium notices, . . . , according to the planned premium shown on page 3. You may skip planned premium payments or change their frequency and amount if the accumulation fund is large enough to keep your policy in force.

(Stowe Aff. ¶ 8, Ex. A at ML PIPER 000014.)  In the "Grace Period" section, the Policy provided:

> If the accumulation fund on any monthly anniversary, minus any policy loan and loan interest, is less than the monthly deduction for that month, there will be a grace period of 61 days after that anniversary to pay an amount that will cover the monthly deduction.  We will send you a notice at the start of the grace period.  We will also send a notice to any assignee on our records.
>
> If we do not receive a sufficient amount by the end of the grace period, your policy will then end without value.

(Stowe Aff. ¶ 9, Ex. A at ML PIPER 000015.)  In the "Reinstatement" section, the Policy provided:

> If the grace period has ended and you have not paid the required premium and have not surrendered your policy for its cash value, you may reinstate this policy while the insured is alive if you: 1. Ask for reinstatement within 3 years after the end of the grace period . . .

(Stowe Aff. ¶ 10, Ex. A at ML PIPER 000015.)  In the "Notice" section, the Policy speaks to address changes as follows:

> When you write to us, please give us your name, address and policy number.  Please notify us promptly of any changes.  We will write to you at your last known address.

(Stowe Aff. ¶ 11, Ex. A at ML PIPER 000031.)

From the time the Policy was issued until January 1991, CCDDBT paid the premiums on the Policy.  (Stowe Aff. ¶ 12, Ex. B at ML PIPER 00397-414.)  When the Policy was assigned to Decedent in January 1991, the Pipers became responsible for the premium payments.  (Stowe Aff. ¶ 13, Ex. A at ML PIPER 00024.)  On the assignment form, Decedent listed his address as P.O. Box 327, South Egremont, Massachusetts 01258.  (Id.)  This address

was used by Defendant for sending correspondence, including all required notices (premium bills and annual statements), to Decedent until July 18, 2000, when Defendant processed an address change request received from Decedent on or about July 14, 2000, in which Decedent requested a change of address from the previously used P.O. Box 327.  (Stowe Aff. ¶ 14, Ex. C at ML PIPER 00058-59.)

On or about July 14, 2000, the Pipers notified Defendant on the back of a payment slip that their address had changed to P.O. Box 91, North Egremont, Massachusetts 01258. (Stowe Aff. ¶ 16, Ex. C at 00058; Roberts Aff. ¶ 5.)  Defendant effectuated this change of address on July 18, 2000.  (Id.)  Mrs. Piper alleges that the change request was expressly temporary.  (MP Aff. ¶ 9.)  Defendant does not process temporary address changes.  (Roberts Aff. ¶ 15.)  No other address change requests were received by Defendant from the Pipers. (Stowe Aff. ¶ 17, Roberts Aff. ¶ 6.)  According to Roxanne Roberts, the Supervisor of Defendant's Data Integrity Unit, which is responsible for processing address changes, Defendant processed properly the Pipers' address change request in accordance with Defendant's internal policies and procedures.  (Roberts Aff. ¶ 7, Ex. A; Sherer Aff. Ex. B, Roberts Dep. 63:15-18; 68:17-25; 145:14-22; 193:3-21; 214-219.)  According to Defendant, from July 18, 2000, to January 15, 2003, Defendant sent all notices required under the terms of the policy (premium bills and annual statements) to the P.O. Box 91 address.  (Stowe Aff. ¶ 18, Ex. D; Roberts Aff. ¶ 8.)  During this period of time, Decedent paid a total of $9,344.92 in premiums, including the last payment, received by MetLife on August 21, 2002, in the amount of $1,600.  (Stowe Aff. ¶ 18, Exs. B, E.)  The Policy stayed in force through September 1, 2003 "as per the value in the accumulation account."  (Stowe Aff. ¶ 19, Exs. B, E.)

A total of $53,356.28 was paid by CCDDBT and Decedent from March 11, 1987, through August 21, 2002; Decedent paid a total of $41,468.46 in premiums from January 1991 through August 21, 2002. (Stowe Aff. ¶ 15, Ex. E.)

On January 15, 2003, a regularly scheduled premium bill that was sent to Decedent at the P.O. Box 91 address was returned to Defendant as undeliverable. (Stowe Aff. ¶ 20, Exs. C, D; Roberts Aff. ¶ 9.) This premium bill was the billing notice for February 2003. (Stowe Aff. ¶ 20.) Prior to that date, no mail sent to the P.O. Box 91 address had been returned to Defendant. (Stowe Aff. ¶ 21; Roberts Aff. ¶ 10.) As Defendant had not received a further change of address notification, in accordance with Defendant's policies and procedures, it searched for Decedent's last known address through a "reputable database system" utilizing his social security number and credit reporting sources. (See Stowe Aff. ¶ 22; Roberts Aff. ¶ 11, Ex. A at 00971-974.)

Defendant's database search revealed a last known address of 409 W. 48th Street, Apt. #3RW, New York, NY 10036. Plaintiffs acknowledge that the New York address was a valid address for Decedent at one time, but was no longer in use at the time of the database search. (Leonard Affirm. Ex. B, MP Dep. 127:9-23.) Plaintiffs also state that the P.O. Box 327 address remained a valid address at all times. (MP Aff. ¶ 7.) Plaintiffs further state that the Pipers eventually switched back from the P.O. Box 91 address to the P.O. Box 327 address (MP Aff. ¶ 11), but there is no record of their indicating this change to Defendant (Stowe Aff. ¶ 17, Roberts Aff. ¶ 6), as required by the Policy (Stowe Aff. Ex. A at 00031). Defendant sent a confirmation letter to the New York address. (Stowe Aff. ¶ 23, Ex. C.) This confirmation letter was not returned and, on or about August 1, 2003, Defendant sent a premium bill that was not

returned. (Stowe Aff. ¶ 23, Ex. D at 01130.) Defendant did not receive any payment in response. (Stowe Aff. ¶ 23, Exs. B, E.) The last monthly premium payment on the Policy during Mr. Piper's life was received by Defendant on August 21, 2002, (Stowe Aff. Exs. B at 00413-414, E at 00027), but the premiums previously paid for the Policy were sufficient through September 1, 2003, when the accumulation account was depleted and payment became due to keep the Policy in force. (Id.) Defendant asserts that it sent a pre-lapse notice to the New York address on or about September 1, 2003, which advised that the 61-day grace period would expire on November 1, 2003; Defendant maintains that this notice was not returned by the U.S. Postal Service and that Defendant has no evidence that delivery of the notice failed. (See Stowe Aff. ¶ 24, Ex. D at 01018.) No payment was received by Defendant in response to the pre-lapse notice. (Stowe Aff. ¶ 24, Exs. B, E.)

On or about November 3, 2003, Defendant sent a lapse notice to the New York address advising Decedent that coverage had terminated on November 1, 2003, due to nonpayment of premiums due. (Roberts Aff. ¶ 13, Ex. C at 00001.) This letter was returned to Defendant on or about January 21, 2004, with "Moved" written on the envelope. (Id.) As Defendant did not have another address to use and had followed its internal policy of making one attempt to find a valid address for policyholders, in accordance with Defendant's policies and procedures, Decedent's file was marked "undeliverable" by the Data Integrity Unit. (See Stowe Aff. ¶ 25, Ex. C; Roberts Aff. ¶ 14.)

While Decedent's policy was in effect, the Pipers received at their P.O. Box 327 address policyholder trust interest checks issued by Mellon Investor Services, LLC ("MIS"), a transfer agent for Defendant that sent correspondence to shareholders of MetLife, Inc. regarding

their shareholder dividends from the company.  (Stowe Aff. ¶ 28; Roberts Aff. ¶ 18.)  Correspondence from MIS does not refer to the Policy at all, does not include the Policy number, and has no relationship to the premium payments that were owed on the Policy.  (Id.)  Defendant and MIS are legally separate entities and any address information, including change of address notifications, retained by Defendant is processed and handled independently from MIS.  (Id.)  Mrs. Piper states that she did not realize the policyholder trust statements were sent by MIS and instead believed that they were sent by Defendant, as the statements were "prominently emblazoned" with Defendant's logo.  (MP Aff. ¶ 13).  Mrs. Piper states that she believed that, if any money was owed on the Policy, MetLife would have sent a bill and not statements reflecting a credit balance, and because she did not receive payment requests but rather only received policyholder trust statements that reflected a credit balance, she assumed there were no payments due on the Policy.  (Id. at ¶ 12, 14-15).  Mrs. Piper further states that, because Mr. Piper was receiving mail at the P.O. Box 327 address that she believed to be sent from Defendant, she believed that she must have changed the address back to P.O. Box 327 for Defendant's records.  (MP Dep. 77:7-11.)

In 1999, when MetLife, Inc. became a public company, it gave MIS the names and addresses of all eligible shareholders, including Mr. Piper, and MIS sent a demutualization mailing to Mr. Piper at the P.O. Box 327 address.  (Sherer Aff. ¶ 7; Ex. D, Pitou Dep. 47:5-12; Ex. F at 00236-394.)  Among the documents mailed was a Policyholder Information Booklet, which stated that ChaseMellon Shareholder Services, LLC (now BNY Mellon f/k/a Mellon Investor Services), a separate entity from Defendant, was responsible for sending all communications to and maintaining addresses for the trust beneficiaries.  (Sherer Aff. ¶ 9, Ex. F

at 00343-344.)  The mailing further stated, "The Purchase and Sale Program is administered by Mellon Investor Services, LLC.  The Purchase and Sale Program is not administered by MetLife or the Trust."  (Sherer Aff. ¶ 12, Ex. F at 00381.)

On or about October 10, 2006, Mrs. Piper notified Defendant that Mr. Piper had passed away on September 21, 2006.  (Stowe Aff. ¶ 26, Ex. G; Roberts Aff. ¶ 16.)  Defendant informed Mrs. Piper that the Policy had lapsed on September 1, 2003 for nonpayment of premiums due .  (Id.)  Defendant further told Mrs. Piper that it had acted in accordance with the Policy terms and its internal policies and procedures in sending a lapse notice to 409 W. 48th Street, New York, NY, the last known address as reported by the data service used by Defendant to obtain a valid address pursuant to Defendant's policies and procedures.  (Id.)

### DISCUSSION

Summary judgment in favor of a moving party is appropriate where the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed R. Civ. P. 56(c).  In opposing the motion, the nonmoving party may not rest on mere arguments that there are contested facts, but must "set forth specific facts showing that there is a genuine issue."  Fed. R. Civ. P. 56(e).  The facts will be viewed in the light most favorable to the party opposing the motion, and all reasonable inferences shall be drawn in the non-movant's favor.  Am. Cas. Co. v. Nordic Leasing, Inc., 42 F.3d 725, 728 (2d Cir. 1994).  Summary judgment is not appropriate if there are disputes about material facts "such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Rattner v. Netburn, 930 F.2d 204, 209 (2d Cir. 1991).  However, "[c]onclusory

allegations, conjecture and speculation" do not establish a genuine issue of fact, Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998), and "[f]actual disputes that are irrelevant or unnecessary will not be counted," Anderson, 477 U.S. at 248.

Plaintiffs assert a breach of contract claim, arguing that Defendant failed to ascertain the Pipers' proper address, thus denying them the information necessary to keep the policy premiums current and breaching its obligation to provide proper notice of default, and that the resulting claim denial was in breach of the life insurance contract. They further contend that Defendant's failure to ascertain the Pipers' proper address and provide effective default notice was negligent, and that Defendant was unjustly enriched by its denial of policy benefits.

Breach of Contract Claim

The essential elements of a breach of contract claim are: (1) the existence of an agreement between the plaintiff and defendant; (2) due performance of the contract by the plaintiff; (3) breach of the contract by the defendant; and (4) damages arising therefrom. Texas Liquids Holdings, LLC v. Key Bank Nat. Ass'n, No. 05 Civ. 5070, 2007 WL 950136, at *2 (S.D.N.Y. Mar. 27, 2007) (citing Command Cinema Corp. v. VCA Labs, Inc., 464 F. Supp. 2d 191, 198 (S.D.N.Y. 2006) (quoting Terwilliger v. Terwilliger, 206 F.3d 240, 245-46 (2d Cir. 2000))). The construction of an unambiguous contract is an appropriate question of law for the Court. See e.g., Paul Revere Life Ins. Co. v. Bavaro, 957 F. Supp. 444, 447 (S.D.N.Y. 1997) (holding that if a provision is "plain and unambiguous, the court's role is simply to enforce the common and ordinary meaning of it.").

Plaintiffs allege that Defendant breached the notice provision of the contract by

failing to send premium and default notices to the P.O. Box 327 address, and further failed to make good on the contract by failing to pay the face value of the Policy at the time of Decedent's death. (Compl. ¶ 29, 30.) The provisions of this contract are, however, unambiguous and, when applied to the undisputed factual record, they are dispositive of Plaintiffs' breach of contract claim.[1]

Plaintiffs' claim fails because the Policy unambiguously provides that the policyholder has a duty to maintain a valid address on file, and that MetLife is to use the last known address when the current address on file fails. The record shows that Defendant did not breach any provision of the Policy, including the notice provisions, but rather provided all notices required by the Policy in accordance with its routine policies and procedures. (See e.g., Stowe Aff. Ex. D.) There is no evidence that, after the Pipers requested a change of address to P.O. Box 91, they subsequently gave notice to MetLife of any other address.

Defendants have proffered mailing records demonstrating that all notices due under the Policy were mailed to the address that Defendant had on file at the relevant times. (See Stowe Aff. Ex. D.) Plaintiffs do not dispute that these notices were mailed to the relevant

---

[1] Plaintiffs also contend that the MIS mailings were confusing and led them to believe that the Policy had been paid in full and that this confusion precluded the Policy from lapsing. However, the MIS mailings made no reference to the Policy and Plaintiffs had received prior notification that these mailings were in no way related to the Policy. Plaintiffs' confusion cannot be attributed to Defendant and therefore cannot support a finding that Defendant breached any term of the Policy. Plaintiffs rely on speculative and conclusory allegations, including that Mrs. Piper "must have" notified Defendant of the address change. These types of allegations are insufficient to withstand a motion for summary judgement. See e.g., Maharan v. Berkshire Life Ins. Co., 110 F. Supp. 2d 217, 223 (W.D.N.Y. 2000) (citing Fletcher v. Atex Ins., 68 F.3d 1451, 1456 (2d Cir. 1995) (granting summary judgment for insurer and dismissing breach of contract and unjust enrichment claims where policy lapsed for nonpayment of premiums due)).

addresses.  By establishing its routine and reasonable office procedures, Defendant has met its burden of proof under New York law that notice was mailed and thus presumed received.  <u>Badio v. Liberty Mutual Fire Ins. Co.</u>, 785 N.Y.S.2d 52, 54 (App. Div. 1st Dep't 2004).  "An insured's denial of receipt, standing alone, is insufficient to rebut the presumption [of delivery].  Indeed, 'in addition to a claim of no receipt, there must be a showing that routine office practice was not followed or was so careless that it would be unreasonable to assume that the notice was mailed.'"  <u>Id.</u>  "An insurer may effectively cancel its policy by mailing a notice of cancellation to the address shown on the policy, even if notice is not actually received by the insured."  <u>Id.</u> at 55.  Defendant has proffered uncontroverted evidence that it followed its procedures for mailing notices and there is no evidence that the practices were not followed or were careless; the presumption of receipt applies.  Plaintiffs' claim of breach of Defendant's notification obligations under the Policy must therefore be determined in Defendant's favor as a matter of law.

        The Policy provides unambiguously that it will be kept in force so long as sufficient premium payments are made to maintain the value of the accumulation fund at or above the premium amount owed.  (Stowe Aff. Ex. A.)  The Policy also provides for a 61-day grace period and reinstatement period.  (<u>Id.</u>)  It is undisputed that the Pipers did not make sufficient premium payments to keep the policy in force, they did not make any payment during the grace period to keep the Policy in effect, and they did not reinstate the Policy in accordance with its provisions.  As a result, the Policy lapsed due to the Pipers' failure to pay sufficient premiums prior to Mr. Piper's death.  The Pipers did not duly perform on the contract, and Plaintiffs' breach of contract claim therefore fails.  <u>See</u> <u>e.g.</u>, <u>Gerold v. Companion Life Ins. Co.</u>,

819 N.Y.S.2d 276, 278 (App. Div. 2d Dep't 2006) (granting summary judgment for defendant insurer dismissing breach of contract claim where policy lapsed for nonpayment of premiums due).

Based on the undisputed factual record, viewed in the light most favorable to Plaintiffs, Plaintiffs have failed to carry the burden of demonstrating the existence of any genuine issue of material fact as to whether there was any relevant contract breach on Defendant's part. The undisputed factual record establishes that premiums went unpaid and that the contract was properly lapsed for nonpayment. The Policy thus lapsed on November 1, 2003, before Decedent's death. Denial of payment under the Policy, therefore, does not constitute a breach of contract. Defendant is entitled to judgment as a matter of law on the breach of contract claim. See Fisher v. William Penn Life Ins. Co., 166 F.3d 1200, 1998 WL 887176 (2d Cir. Dec. 14, 1998) (affirming summary judgment for insurer where policy lapsed for nonpayment of premiums due).

Negligence Claim

Plaintiffs also assert a negligence claim against Defendant, arguing that Defendant owed them a duty of care separate from its contractual duties under the Policy. However, Plaintiffs' failure to identify a duty of care external to Defendant's obligations under the insurance contract is fatal to their claim. Texas Liquids Holdings, 2007 WL 950136 at *3. In order to state a claim for negligence under New York law, plaintiffs must allege: (1) existence of a duty owed by defendant to plaintiff; (2) breach of that duty; and (3) that the breach was the proximate cause of plaintiff's injury. Id. (citing Alfaro v. Wal-Mart Stores, Inc., 210 F.3d 111,

114 (2d Cir. 2000)). "A breach of contract claim cannot be converted into a negligence claim absent a finding that a defendant breached a duty of reasonable care distinct from its contractual duties." Id. (citing N.Y.U. v. Continental Ins. Co., 662 N.E.2d 763, 767-68 (N.Y. 1995)).

As explained above, the Policy contains explicit notice provisions related to sending premium due notices as well as pre-lapse notices and provides that, while Defendant will attempt to find a valid address for a policyholder, it is up to the policyholder to ensure that Defendant has a valid address. Plaintiffs have failed to present any evidence that Defendant owed them a duty of care separate from any duty owed under the Policy. Therefore, Plaintiffs have failed to state a claim for negligence and Defendant is entitled to judgment dismissing Plaintiffs' negligence cause of action as a matter of law.

Plaintiffs' Unjust Enrichment Claim

Plaintiffs assert a claim of unjust enrichment against Defendant, arguing that, regardless of whether the Policy was in effect at the time of Decedent's death, Defendant's failure to pay will unjustly enrich Defendant and that Plaintiffs are therefore entitled to recover on the Policy proceeds. In order to assert a claim for unjust enrichment under New York law, a plaintiff must show: "(1) that the defendant was enriched; (2) that the enrichment was at plaintiff's expense; and (3) that the circumstances were such that in equity and good conscience defendant should return the money." Leber Assocs. v. The Entertainment Group Fund, Inc., No. 00 Civ. 3759, 2003 WL 20750211, at *19 (S.D.N.Y. July 29, 2003) (citing Dolmetta v. Uintah Nat'l Corp., 712 F.2d 15 (2d Cir. 1983)).

Plaintiffs premise this claim on the argument that the Policy was improperly

terminated due to Defendant's failure to properly notify the Pipers, not for their failure to make premium payments. As explained above, this argument fails. See e.g., Maharan, 110 F. Supp. 2d at 224 (holding it was an uncontested fact that failure to pay premiums due caused the policies at issue to default and that as such, plaintiff's unjust enrichment claim fails). Defendant is therefore entitled as a matter of law to judgment dismissing Plaintiffs' unjust enrichment claim.

## CONCLUSION

For the reasons explained above, Defendant's motion for summary judgment dismissing Plaintiffs' complaint is granted in its entirety.

This decision resolves docket entry no. 29.

The Clerk of Court is respectfully requested to enter judgment in Defendant's favor and close this case.

Dated: New York, New York
August 10, 2009

_____
LAURA TAYLOR SWAIN
United States District Judge